J-A35044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CATHLEEN A. CASTAGNA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD W. CASTAGNA, | : | |
| | : | |
| Appellant | : | No. 523 WDA 2014 |

Appeal from the Order March 18, 2014
In the Court of Common Pleas of Washington County
Domestic Relations at No(s): 01013DR2008 PACSES NO. 428110361

| | | |
|---|---|---|
| MICHAEL BAKER AND DIANE SUSS, | : | IN THE SUPERIOR COURT OF |
| PERSONAL REPRESENTATIVES OF THE | : | PENNSYLVANIA |
| ESTATE OF RICHARD W. CASTAGNA, | : | |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| CATHLEEN A. CASTAGNA, | : | |
| | : | |
| Appellant | : | No. 524 WDA 2014 |

Appeal from the Order March 18, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2010-263

BEFORE: BENDER, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.: **FILED JANUARY 09, 2015**

Cathleen Castagna ("Wife") appeals from the trial court order terminating her right to alimony *pendente lite* ("APL") effective January 7,

2014, and setting to zero the arrears owed by her deceased husband's estate ("the Estate").[1]  We affirm.

Wife married Richard W. Castagna ("Husband") during 1997 and separated in 2007.  The couple amassed a significant marital estate.  Following the separation, Wife was awarded monthly spousal support in the amount of $9,200.  After Husband filed for divorce during 2010, the support order was converted to APL.  Husband's death three years later preceded the divorce decree or equitable distribution.[2]  Upon receiving notice of Husband's death, the domestic relations section that administered the support/APL payments terminated the order for APL.  Wife challenged this decision, and the Estate countered that APL terminated automatically upon Husband's death.  On June 5, 2013, the trial court directed the domestic relations section to determine whether APL should be reinstated and, if so, at what rate.  Thereafter, on July 22, 2013, the domestic relations section

_____

[1] In Washington County, divorce and support actions are administrated in separate divisions of the Court of Common Pleas.  The underlying litigation began as a claim for spousal support in the Domestic Relations Section at No. 1013 DR 2008.  The independent divorce action was initiated in the Civil Division at No. 2010-263.  Instantly, the order affecting APL was entered at both divisions and Wife filed a single notice of appeal referencing both docket numbers.  This Court consolidated the appeals *sua sponte* and directed the parties to brief and argue them as if one.

[2] Although Husband died during the pendency of the divorce, since the parties had established the grounds for divorce prior to Husband's death, the action did not abate.  *See* 23 Pa.C.S. § 3323(d.1).  Husband's personal representatives, Michael Baker and Diane Suss, continued the divorce action on his behalf.

recommended that APL be reinstated at $9,205 per month, and it issued an interim order that set the arrears at $32,136.99, which presumably is the sum that accrued between the effective date of the order terminating APL and the date it was reinstated. The interim order directed that the arrears was due immediately. The Estate disputed the calculation of the interim order, demanded a hearing *de novo* pursuant to Washington County Local Rule 1910.01, and filed a petition for special relief seeking to suspend the interim APL order pending *de novo* review. The trial court denied the latter request for relief.

While the *de novo* appeal was pending, on February 4, 2014, the parties executed a property settlement agreement mutually releasing each other from all economic claims, including, *inter alia*, "past, present or future support." Property Settlement Agreement, 2/4/14, at ¶2. Additionally, the second provision of paragraph eight of the agreement provided, "It is understood that the financial and property arrangements made hereunder constitute the sole claims by Wife against the Estate, now or at any time in the future." **Id**. at ¶8. The agreement contained an integration clause that disclaimed all other representations or warranties that were not expressed therein, **id**. at ¶10 (g), and articulated that "for the purpose of interpretation," it "shall be deemed to have been jointly drafted[.]" **Id**. at ¶10 (d).

Following her execution of the property settlement agreement, Wife refused to sign a concomitant consent decree directing the domestic

relations section to terminate APL, set the arrears at zero, and mark the support case as closed. Instead, she relied upon the domestic relations section's accounting that reflected arrears totaling $32,106.99 as of January 7, 2014, which she demanded be paid outside of the agreement.[3] The Estate countered Wife's demand for the purported arrearages with a petition to enforce the February 4, 2014 settlement agreement. Specifically, the Estate requested that the trial court enter an order confirming the termination of APL and setting the APL arrears at zero. Upon review of the agreement, the trial court granted relief. This timely appeal followed.

Wife presents a single issue for our review: "Whether the trial court erred as a matter of law in concluding that the property settlement agreement barred recovery of arrearages due [Wife] of alimony *pendente lite* as of January 7, 2014." Wife's brief at 4.

In Pennsylvania, the law of contracts governs a property agreement if the agreement is not merged into a divorce decree. **Nessa v. Nessa**, 581 A.2d 674, 676 (Pa.Super. 1990) ("In summation, we hold separation or property settlement agreements for support remain as contracts to be

_____

[3] A $30.00 discrepancy exists between the calculations of arrears in the interim order and the subsequent certification of accounting. While the certified record does not reveal the precise basis for the inconsistency, we presume it is the product of the interim order's directive that $5.00 of the monthly APL payment to Wife be applied toward arrears. Nevertheless, since we affirm the trial court's order setting the amount of arrears to zero, we do not address the apparent irregularity herein.

enforced at law or in equity unless they are merged into a divorce decree or court Order."). Our Supreme Court explained in *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004), that

> under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347, 351 (1973).
>
> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672 (1958). When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986).

Herein, the trial court determined that the property settlement agreement was unambiguous. The court's conclusion is founded upon a "whereas" recital and two substantive provisions. The relevant substantive provisions are as follows:

> **2. *General Mutual Release*.**
>
> Except as otherwise specifically provided herein, Wife for herself, her heirs, representatives and assigns, forever RELEASES, REMISES, DISCHARGES and QUITCLAIMS Baker, Suss and the Estate, and Baker, Suss and the Estate for themselves, their heirs, representatives and assigns forever RELEASE, REMISE, DISCHARGE and QUITCLAIM Wife from and with respect to all liability, claims, causes of action, damages, costs, contributions, expenses or demands whatsoever in law or in equity and any and all right, title, interest or claim of past, present or future support, division of property, whether real or personal, tangible or intangible, including income or gain from property hereafter accruing, right of dower and curtesy, right to act as administrator or executor in the Estate, right to distributive share in the Estate, right of exemption in the Estate, all rights, claims, demands, liabilities and obligations arising

under the provisions of the Pennsylvania Divorce Code of 1980 and its subsequent amendments, the Pennsylvania Probate Estate and Fiduciary Code, or any other property rights, benefits or privileges accruing to them by virtue of said marriage relationship of Husband and Wife, or otherwise, and whether the same are conferred by the statutory law or by the common law of the Commonwealth of Pennsylvania, or any other state, or of the common law of the United States of America. Wife hereby further represents, warrants, covenants and agrees not to sue Baker, Suss or the Estate, and Baker, Suss and the Estate hereby represent, warrant, covenant and agree not to sue Wife with respect to, or to enforce, any of the rights relinquished pursuant to this Paragraph.

. . . .

**8**. **Termination and Waiver of Spousal Support, Alimony Pendente Lite, Alimony, Counsel Fees or Expenses.**

The current Support Order in the Support Action is hereby terminated effective as of January 7, 2014. Wife hereby waives and relinquishes any right to seek an Order against the Estate for any further spousal support, alimony *pendente lite*, alimony, counsel fee or expenses. It is understood that the financial and property arrangements made hereunder constitute the sole claims by Wife against the Estate, now or at any time in the future. The Estate hereby waives any claim for overpayment of Wife's APL.

Property Settlement Agreement, 2/4/14.

Wife's argument focuses on the facts that the agreement stated that she had a right to APL until it was terminated on January 7, 2014. She posits that since the arrears accrued prior to that date, it was unavoidably excluded from the agreement. She continues that, while the agreement specifically states that the Estate waived its right to recoup any overpayments, a reciprocal provision requiring her to waive the outstanding arrears is not included. Thus, relying upon the canon of statutory

- 6 -

interpretation that items not included are deemed to be excluded, she maintains that since the agreement does not address arrears specifically, it would be unreasonable to find that she relinquished her right to that sum. She also asserts that, pursuant to principles of contract interpretation, the specific provision in paragraph eight, relating to the termination and waiver of support, APL, and alimony, supersedes the general provision in paragraph two regarding the mutual release of claims.

Initially, we reject Wife's primary contention that the specific reference in paragraph eight of the agreement that the interim APL order would not terminate until January 7, 2014, is dispositive. We observe that while the first two sentences in paragraph eight suggest that APL would remain in effect until January 7, 2014, and that Wife would relinquish "further spousal support, alimony *pendente lite*, alimony, counsel fee[s] or expenses," the subsequent statement clearly directs that the parties agree that the agreement would address all of Wife's current and future support-related claims. Property Settlement Agreement, 2/4/14, at 6. Specifically, Wife agreed, "It is understood that the **financial and property arrangements made hereunder constitute the sole claims by Wife against the Estate, now or at any time in the future**." *Id*. (emphasis added). Meaningfully, when the parties executed the settlement accord, the Estate maintained that APL was improper following the date of Husband's death and it was awaiting the requested *de novo* review of the court's contrary determination. Accordingly, neither the award of APL nor the calculation of

the arrears was assured in this case. Since the purported arrears were outstanding on the date that Wife waived her then-current claim to APL, it necessarily follows that the Estate's obligation to pay the purported arrears fell within the accord.

After a thorough review of the parties' briefs, pertinent law, and the certified record, we conclude that the Honorable Valarie Costanzo cogently addressed Wife's argument, and we affirm on the basis of her well-reasoned opinion entered on May 15, 2014. Stated succinctly, we concur with the trial court's conclusion that the property settlement agreement between Wife and the Estate subsumed **all** outstanding economic claims, including Wife's APL arrears.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2015

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

ENTRY OF OPINION, ORDER, DECREE, ADJUDICATION OR JUDGMENT FILED __5/15/1__

MAILED __5-16-14__

TO __A. KJSTUKESS__

MICHAEL BAKER and DIANE SUSS,
Personal Representatives of the ESTATE OF
RICHARD W. CASTAGNA,

Plaintiffs,

v.

CATHLEEN CASTAGNA,

Defendant.

No. 2010-263
524 WDA 2014

CATHLEEN CASTAGNA,

Plaintiff,

v.

RICHARD CASTAGNA,

Defendant.

No. 1013 DR 2008
523 WDA 2014

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

These two matters come before the Court upon Cathleen Castagna's (hereinafter referred to as "Appellant") appeal to the Superior Court of Pennsylvania from an Order of the Trial Court, dated March 18, 2014, which terminated alimony *pendente lite* and set outstanding arrears at zero (hereinafter referred to as "Order.") The Order was entered pursuant to a property settlement agreement entered into by the parties that terminated and waived any claims of alimony *pendente lite* by the Appellant. The Appellant filed a Notice of Appeal of this Order to the Superior Court on or about March 31, 2014.

Appellant has asserted that she is due certain arrearages for alimony *pendente lite* payments that accrued prior to the date the property settlement agreement was entered into by

40

both parties. However, the language of the agreement clearly stated that the Appellant relinquished any and all rights to any further payment by the Estate, whether it is by spousal support, alimony *pendente lite*, alimony, or other counsel fees and expenses. Accordingly, the Trial Court's Order should be affirmed.

## Procedural History

Richard Castagna (hereinafter referred to as "Husband") and his wife, Appellant, separated on or about July 7, 2007. Thereafter, Appellant filed for spousal support and ultimately Husband entered into a consent order to pay Appellant $9,200 per month. On January 11, 2010, Husband filed for divorce from Appellant. In response, Appellant filed a counter-claim and answer that included a count for alimony *pendente lite*. Consequently, the Court converted the previously agreed upon spousal support to alimony *pendente lite*.

During the marriage, the parties enjoyed substantial wealth, which resulted in the parties engaging in extensive discovery for purposes of equitable distribution. Husband passed away on April 7, 2013, before a final divorce decree was entered. Thereafter, an estate (hereinafter referred to as "Estate") was opened and Husband's executors were substituted as Plaintiffs on his behalf in the divorce action. After Husband's death, the Washington County Domestic Relations Section terminated Appellant's alimony *pendente lite*. Appellant's alimony *pendente lite* payments were ultimately reinstated after a hearing on the matter. The Court ordered the Estate to provide Appellant with $9,200 in alimony *pendente lite* payments per month.

On February 4, 2014, the Estate and Appellant, who were both represented by counsel, entered into a property settlement agreement (hereinafter referred to as "agreement.") The agreement was drafted by the Estate's attorney. The agreement purported to be a global settlement of all claims, liabilities and causes of action between Appellant and the Estate. The

41

agreement provided Appellant with the former martial residence, all tangible personal property currently in her possession, a $25,000 IRA, and a $1,000,000 equitable distribution payment. In consideration thereof, the Appellant agreed that she would waive, relinquish and release any claims she may have had against the Estate.

After entering the agreement, Appellant sent a letter to the Estate requesting that the Estate pay Appellant $32,106.99 in arrearages. In response, the Estate presented a petition to enforce the agreement before this Trial Court wherein the Estate argued that the Appellant was precluded from any owed arrearages as a result of the agreement. This Trial Court determined that under the clear and unambiguous language of the agreement, Appellant waived any and all right that she had to an arrearage payment. Accordingly, this Trial Court issued an Order that Appellant's arrears were to be set at zero. It is this Order that Appellant now seeks to appeal.

## OPINION

As this Honorable Court has explained, "It is well established that the law of contracts governs marital settlement agreements, and under the law of contracts, the court must ascertain the intent of the parties when interpreting a marital agreement." Crispo v. Crispo, 909 A.2d 308, 313 (Pa. Super. 2006); Sorace v. Sorace, 655 A.2d 125 (Pa. Super. 1995); Adams v. Adams, 848 A.2d 991 (Pa. Super. 2004). "Absent fraud, misrepresentation, or duress, spouses shall be bound by the terms of their agreements." Id. (citing McMahon v. McMahon, 612 A.2d 1360, 1363 (Pa. Super. 1992)). It is well established in this Commonwealth that property settlement agreements are presumed valid and binding upon spouses. McGannon v. McGannon, 359 A.2d 431 (Pa. Super. 1976).

When interpreting contractual agreements that involve clear and unambiguous language, the Trial Court need only examine the writing itself, and must not modify the plain meaning of

42

its words. <u>Kripp v. Kripp</u>, 849 A.2d 1159, 1163 (Pa. 2004); <u>Carsone v. Carsone</u>, 688 A.2d 733 (Pa. Super. 1997). Contractual language is only considered ambiguous if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." <u>Hutchison v. Sunbeam Coal Corp.</u>, 519 A.2d 385, 390 (Pa. 1986).

In the present matter, Appellant argues that the Trial Court abused its discretion by finding that the plain language of the agreement precluded Appellant from seeking the balance of accrued alimony *pendente lite* arrearages. Specifically, Appellant asserts that the Trial Court erred by failing to consider (1) the word "further" as contained in Paragraph 8, and (2) that the agreement waived overages but did not waive arrearages. Paragraph 8 of the agreement provides in pertinent part:

> **8. Termination and Waiver of Spousal Support, Alimony Pendente Lite, Alimony, Counsel Fees or Expenses.**
>
> Wife hereby waives and relinquishes any right to seek an Order against the Estate for any further spousal support, alimony <u>pendente lite</u>, alimony, counsel fee or expenses. It is understood that the financial and property arrangements made hereunder constitute the sole claims by Wife against the Estate, now or at any time in the future. The Estate hereby waives any claim for overpayment of Wife's APL.

The Cambridge English Dictionary defines the word "further" as "more, additional, or extra." In Paragraph 8 of the agreement, "further" is placed directly before "spousal support, alimony <u>pendente lite</u>, alimony, counsel fee or expenses." The plain meaning of this sentence is clear: Appellant agreed not to pursue any claim for any further monetary support from the Estate. Accordingly, by entering the agreement, Appellant agreed to waive and relinquish any outstanding claims she may have had against the Estate, including her right to collect alimony *pendente lite* arrearages. The language that was agreed to by the parties clearly embodies the intent of the agreement: to release the Estate from any other support claims from Appellant.

43

Because the agreement is free from ambiguity, the agreement must be enforced as written. For that reason, the Trial Court's Order should be affirmed.

Appellant also argues that this Trial Court erred by failing to consider that the agreement contained a waiver for overages, and not arrearages. As previously explained, when interpreting a contract, the Trial Court is bound by the words adopted by the parties. Kripp, 849 A.2d at 1163. The Trial Court is not permitted to modify or add to the plain meaning of contractual language. Id. Paragraph 2 of the agreement provides in pertinent part:

### 2. General Mutual Release.

Wife . . . forever RELEASES, REMISES, DISCHARGES and QUITCLAIMS [the Estate] . . . with respect to all liability, claims, causes of action, damages, costs, contributions, expenses or demands whatsoever in law or equity and any and all right title, interest, or claim of past, present or future support . . . all rights, claims, demands, liabilities and obligations arising under the provisions of the Pennsylvania Divorce Code of 1980 and its subsequent amendments, the Pennsylvania Probate Estate and Fiduciary Code, or any other property rights, benefits or privileges accruing to them by virtue of said marriage relationship of Husband and Wife.

It is clear from the plain meaning of these words that the intent of the parties was to mutually release each other from *any and all past, present, or future claims.* Therefore, Appellant's argument that arrearages were not covered by this global agreement is meritless.

Further evidence of the parties' intent can be gleaned from the second page of the agreement, which provides the following:

WHEREAS, the above-named parties desire that the Estate of Richard W. Castagna's present and future interest in the marital estate be fixed and determined and its property rights settled, including any and all claims for division of jointly owned and/or marital property, all present and future property rights, all claims for overpayment of spousal support, APL, alimony, counsel fees or expenses and any and all other matters which could be raised under any action brought pursuant to the Pennsylvania Divorce Code and Pennsylvania Probate, Estate and Fiduciary Code . . .

44

In the instant matter, Appellant waived and relinquished her right to proceed with a cause of action for arrearages by entering into the agreement. The language in both Paragraph 2 and Paragraph 8 is unambiguous, and therefore, this Trial Court rightfully interpreted the agreement as written and found that the parties intended that Appellant waive any and all future claims against the Estate.

For the reasons set forth above, the Trial Court respectfully submits its Order should be affirmed.

DATE:                                        BY THE COURT:

_5-15-14_                                    _Valarie Costanzo_, J.
                                             Valarie Costanzo