J-A25044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM SELTZER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BUTLER ENTERPRISES, INC., PCA | : | |
| CORPORATION, AND COMERICA | : | |
| BANK, AS TRUSTEE OF THE NATHAN | : | |
| R. SELTZER REVOCABLE TRUST | : | No. 1607 MDA 2018 |

Appeal from the Judgment Entered September 21, 2018
in the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2013-10024

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED JANUARY 24, 2020**

William Seltzer ("William") appeals from the Judgment entered against him and in favor of Butler Enterprises, Inc. ("Butler"), and PCA Corporation ("PCA"),[1] and dismissing his Complaint for breach of contract and accounting. We affirm.

Sometime prior to 1990, William and his two brothers, Nathan Seltzer ("Nathan") and Philip Seltzer ("Philip") (collectively, the "brothers"), formed two companies, Butler and PCA, with all three brothers becoming shareholders in both companies.  In 1990, the brothers, Butler, and PCA entered into an agreement ("the 1990 Agreement") which, *inter alia*, memorialized an

_____

[1] The trial court dismissed Comerica Bank as a party in August 2016.

approximately $9.4 million debt owed by PCA and Butler[2] to the "Seltzers"[3] for prior loans, and set forth a schedule for repayment of the debt. The 1990 Agreement further stated that Butler and PCA owe $2 million to "Peoples First National Bank and Trust Company," which would be repaid before the $9.4 million debt.

In 1993, the $2 million debt was repaid. Between 1994 and 2008, PCA and Butler repaid the $9.4 million debt to Nathan and Philip only, in 15 installments.[4] In January 2013, William filed a Complaint, alleging that PCA and Butler had breached the terms of the 1990 Agreement. William claimed that, *inter alia*, the 1990 Agreement included him in the definition of "Seltzers," and he was never paid his purported 1/3 share of the $9.4 million debt. Following a non-jury trial, the trial court found against William and in favor of PCA and Butler.

On appeal, William raises the following questions for our review:

A. Does the 1990 Agreement unambiguously define William as a "Seltzer," entitling him to an equal share of the $9.4 million

---

[2] The 1990 Agreement did not specify how the $9.4 million debt was to be divided between PCA and Butler.

[3] The issue on appeal is whether "Seltzers," as used in paragraph 4 in the 1990 Agreement, refers to all three brothers, or only to Nathan and Philip. We will discuss this issue in full *infra*.

[4] Nathan died on April 5, 1995, and Philip died on November 25, 2007. Nathan and Philip's successors received their respective loan repayments following Nathan's and Philip's deaths. For simplicity, we will refer to payments made to their successors as payments made to Nathan and Philip, respectively.

repayment obligation [set forth] in paragraph 4 of the [1990] Agreement?

B. Is William entitled to prejudgment interest flowing from [PCA and Butler's] breach of the 1990 Agreement?

Brief for Appellant at 3.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 664–65 (Pa. Super. 2014) (citation, brackets and ellipses omitted).

In his first claim, William alleges that the term "Seltzers," as used in paragraph 4 of the 1990 Agreement, unambiguously refers to all three brothers collectively. ***See*** Brief for Appellant at 18-27. William claims that the use of the phrases "at times" and "or any of them," in conjunction with "Seltzers," does not create ambiguity. ***Id.*** at 21-24. According to William, the 1990 Agreement also uses "at times" when defining the brothers by their first names, and the 1990 Agreement only refers to the brothers by their first names. ***Id.*** at 21. William alleges that an interpretation of paragraph 4's use

of "Seltzers" as only including Nathan and Philip would create a conflict with other portions of the 1990 Agreement where "Seltzers" is used. *Id.* at 22-24. William claims that a definition of "Seltzers" that includes all three brothers is consistent with its meaning in a second agreement ("the Second Agreement") from the same transaction as the 1990 Agreement. *Id.* at 24-27.

As our Supreme Court has explained,

> when interpreting the language of a contract, th[e] Court's goal is to ascertain the intent of the parties and give it effect. When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning.

*TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260 (Pa. 2012).

> When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). Therefore, we must first determine whether the 1990 Agreement is ambiguous with regard to which brothers are included in the term "Seltzers," as used in paragraph 4 of the 1990 Agreement.

The relevant portions of the 1990 Agreement are as follows:

> "This AGREEMENT made … by and between NATHAN R. SELTZER … PHILIP S. SELTZER … and WILLIAM SELTZER … hereinafter at times collectively referred to as "Seltzers"….
>
> * * *
>
> WHEREAS, Butler, PCA and/or Seltzers and/or any of Seltzers … have made payments and advanced monies and/or arranged to have the same paid and advanced to and/or relative to the business of Butler and PCA … and all of the foregoing along with other matters relative thereto are intended to be resolved hereby this Agreement.
>
> WITNESSETH:
>
> NOW THEREFORE, in consideration of the following covenants and promises, all the parties hereto intending to be legally bound thereby, it is agreed as follows:
>
> * * *
>
> 4. The parties hereto acknowledge and agree that Seltzers have from time to time heretofore loaned to or advanced on behalf of PCA and/or Butler a total of … ($9,404,762.00) to date which is a debt and the only debt to date of PCA and Butler to Seltzers or any of them regardless of the fact that said total amount of money so loaned or advanced to date may actually be in excess of said … ($9,404,762.00) and which debt must be repaid by PCA and Butler to the Seltzers. …

The 1990 Agreement, 1/31/90, at 1-6; **see also** N.T., 11/28-30/17, at 6 (wherein the 1990 Agreement was admitted into evidence as Exhibit J-1).

The 1990 Agreement's first paragraph states that "Seltzers" will "at times" refer to all three brothers collectively. **See id.** at 1. Paragraph 4 does not specify how "Seltzers" is used in paragraph 4, nor does paragraph 4 indicate how the $9.4 million debt is to be apportioned among the "Seltzers." Referring to the rest of the 1990 Agreement, the term "Seltzers" is sometimes

used alone, and sometimes used in conjunction with "or any of them," or "nor any one of them." **See id.** at 1, 3-4, 6-7.[5]

Based on the first paragraph's definition of "Seltzers," and its use throughout the 1990 Agreement, the use of "Seltzers" in paragraph 4 could have multiple meanings. "Seltzers" could refer to all three brothers, and one or more of the brothers contributed money to PCA or Butler that is separate from the $9.4 million. However, if this was the case, it would be more accurate for paragraph 4 to state that "said total amount of money so loaned or advanced to date *is* actually in excess of said [$9.4 million]." In another possibility, "Seltzers" could again refer to all three brothers, and none of them contributed money in addition to the $9.4 million. If this was the case, the phrase "or any of them" would be surplusage, since the total amount loaned by the three brothers would be $9.4 million. In a third possibility, Seltzers could refer to two of the brothers, and the third brother contributed money to PCA or Butler that is separate from the $9.4 million. If this were the case, referring to "Seltzers" would be imprecise, since only two of the three "Seltzers" would be included.

---

[5] We similarly find reference to the Second Agreement unavailing. Like the 1990 Agreement, the Second Agreement states that the three brothers will "at times collectively [be] referred to as 'Seltzers,'" and also frequently uses the phrase "and/or any or all of the Seltzers." Second Agreement, 1/31/90, at 1, 4-6, 8, 10; **see also id.** at 9 (referring to "Seltzers or any of them."); N.T., 11/28-30/17, at 6 (wherein the Second Agreement was admitted into evidence as Exhibit J-41).

Therefore, we find that paragraph 4's use of "Seltzers" is capable of multiple meanings, and is thus ambiguous. Accordingly, the issue must be resolved by the trial court, as the trier of fact. *See Kripp*, *supra*.

At trial, Butler and PCA presented the testimony of Pasco Schiavo, Esquire ("Attorney Schiavo"), who drafted the 1990 Agreement. Attorney Schiavo testified that "Phil and Natae [*sic*] said they'll loan $9.4 million, and they wanted to have that paid back under certain circumstances. So, I suggested that why don't we -- once the $2 million is paid off, then we can pay off the $9.4 million…." N.T., 11/28-30/17, at 50-51. Attorney Schiavo stated:

> My understanding was, that Nate and Phil, Philip Seltzer, that they loaned the money and that they were going to be repaid. … I didn't want to get into how much, Nate, did you put in; and, how much, Phil, did you put in; while knowing that they were the only two people that advanced that [$]9.4 million to [PCA and Butler].

*Id.* at 54-55. Attorney Schiavo also testified that on several occasions, between 1990 and 2003, William acknowledged that Butler and PCA had been repaying the $9.4 million loan to only Philip and Nathan, and that all the documentation showing the loan repayments "look[ed] good." *Id.* at 124-26.

Similarly, Anthony J. Land ("Land"), who was appointed as controller for Butler and PCA and assisted with their accounting functions, testified that Philip and Nathan each loaned $4.7 million to Butler and PCA. *Id.* at 173, 178-79. Land also testified that from 2002 to 2006, he hand-delivered to William, on a regular basis, reports that detailed the loan payments that were

being made to Nathan and Philip to satisfy the $9.4 million loan. *Id.* at 207-13; 242-43.

Richard Klein ("Klein"), who provided accounting services to Butler, testified that in 2012, William requested information regarding payments made by Butler to Butler's shareholders dating back to 1990. *Id.* at 165-66. Klein stated that, as a shareholder, William always had access to Butler's accounting records, and could have requested this information at any time. *Id.* at 169.

William testified on his own behalf at trial. William denied telling Attorney Schiavo that the $9.4 million loan repayment paperwork "look[ed] good." *Id.* at 245-46. William also contested Land's claim that he regularly provided William with paperwork showing the payments to Philip and Nathan. *Id.* at 246. According to William, he first found out that his brothers were receiving payments pursuant to the $9.4 million loan in 2008, and he discussed the matter with Attorney Schiavo for the first time in 2011. *Id.* at 266-67. William claimed that he had invested money into Butler, and expected to be repaid. *Id.* at 260-61, 267, 271.

The trial court found the testimony of Attorney Schiavo and Land "extremely credible." *See* Trial Court Opinion, 7/17/18, at 15, 17. In contrast, the trial court found William's testimony to be vague and unsupported. *Id.* at 17, 18.

Upon review, the trial court's finding that PCA and Butler did not breach the 1990 Agreement, and that William was not entitled to a share of the $9.4 million loan repayments under the terms of the 1990 Agreement, is supported by the evidence of the record.[6] ***See Waldron Elec.***, ***supra***. Accordingly, we affirm the Judgment entered by the trial court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2020

---

[6] In light of our disposition, we need not address William's second claim.