**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANNA M. NICHOL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN L. NICHOL | : | |
| | : | |
| Appellant | : | No. 583 WDA 2021 |

Appeal from the Order Dated May 21, 2021
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 17-009431-005

| | | |
|---|---|---|
| ANNA M. NICHOL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN L. NICHOL | : | |
| | : | |
| Appellant | : | No. 584 WDA 2021 |

Appeal from the Order Dated May 21, 2021
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 17-009431-005

BEFORE:    MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: JULY 5, 2022**

In this alimony modification case, John L. Nichol (Husband) appeals from two orders, now consolidated, wherein the lower court simultaneously denied not only Husband's motion for reconsideration of an earlier court order, but also granted Anna M. Nichol's (Wife) motion for reconsideration, resulting in

_____

[*] Retired Senior Judge assigned to the Superior Court.

the vacation of a separate court order. On appeal, Husband presents two issues, both involving a contractual interpretation of the parties' property settlement agreement (Agreement). First, Husband claims that the court erred by misinterpreting the Agreement in conjunction with the facts as they had been presented, specifically dealing with his alimony obligations after a change in employment. Second and relatedly, Husband asserts that the court should have held a parol evidence hearing to resolve an inherent ambiguity in the Agreement. Separately, Wife has filed a motion to quash Husband's appeal, averring, chiefly, that Husband appealed from two non-final court orders. After a thorough review of the record, we deny Wife's motion and remand for a parol evidence hearing.

After a twenty-five-year marriage, the parties separated in October 2017. Thereafter, in December of that same year, the parties executed the aforementioned Agreement, and in March 2018, the parties divorced. When the Agreement was drafted, Husband, through his employment as a senior vice president at Federated, Inc. (Federated), had been earning over $800,000 a year in compensation, which was inclusive of salary, bonuses, restricted stock options, unrestricted stock, and stock dividends.

In 2019, Husband was laid off from his position at Federated. After several months of job searching, Husband was able to acquire employment at a bank in Wichita, Kansas. However, at this new position, Husband was making, as an approximation, between eighty and eighty-five percent less than he had been at Federated ($135,000 plus a potential bonus). A few

months later, Husband accepted another job offer with a company in Cleveland, Ohio, that specializes in financial advisement. There, Husband's salary, while still over seventy-five percent less than his Federated compensation, was set at $175,000 in addition to bonus opportunities. Husband remains at this employer to this day.

The only particularly relevant aspect of the Agreement to the present matter are the alimony provisions. More specifically, the parties only dispute the operation of those provisions from January 1, 2021, onward. Therein, they state:

> 6(c). From January 1, 2021 through December 31, 2023, Husband shall pay alimony to Wife in the gross amount of $ 7,000.00 per month, plus 25% of the net cash component of his annual bonus award. Husband shall provide to Wife his "Bonus Restricted Stock Program–Investment Management–Action Required Memo" immediately upon receipt (approximately November of each year) and confirmation within five (5) days that he has elected the "maximum cash option" under the Program. This alimony is nonmodifiable except in the event that Husband becomes completely disabled through no fault of his own and unable to work, or there is a change in the federal tax law which adversely affects his ability to deduct his alimony payments for federal tax purposes, in which case the alimony shall only be modifiable to calculate the tax change such that the net amount Wife was to receive per this Agreement remains the same under the new tax code. Wife's share of Husband's bonus under this provision shall be paid to Wife within 15 days of Husband's receipt of it.

> 6(d). From January 1, 2024 through December 31, 2027, Husband shall pay alimony to Wife in the gross amount of $6,000.00 per month, plus 25% of the net cash component of his annual bonus award. Husband shall provide Wife his "Bonus Restricted Stock Program Investment Management-Action Required Memo" immediately upon receipt (approximately November of each year) and confirmation within five (5) days that he has elected the "maximum cash option" under the Program. This alimony is

modifiable based on a substantial change in either party's circumstances (including but not limited to any changes in the tax laws relating to the deductibility of these payments for federal income tax purposes, in which case, the alimony shall be only modifiable to calculate the tax charge such that the net amount Wife was to receive per this Agreement remains the same under the new tax code). Wife's share of Husband's bonus under this provision shall be paid to Wife within 15 days of Husband's receipt of it.

6(h). In the event that Husband is no longer employed at Federated for years 2021 through 2030 and is employed elsewhere, the parties acknowledge that alimony is modifiable and, as such, if Husband receives a salary or some other form of compensation in lieu of the bonus award that he received at Federated, Wife has the ability to seek an increase in that amount.

Property Settlement Agreement, 12/1/17, 9-12.

In an attempt to lessen his alimony obligation, Husband filed a petition for modification of that monthly payment (as well as, presumably, the yearly bonus payments). The petition was predicated on his belief that subparagraph 6(h) allowed for a change based on his attainment of new employment at any point throughout the years 2021 to 2030.

Following an unsuccessful attempt at mediation,[1] which prompted Husband to thereafter motion the court for reinstatement of his petition, Wife eventually filed a motion to dismiss Husband's petition, dually asserting that subparagraphs 6(c) and (d) prohibited modification until 2024 and subparagraph (h) only provided for an upward modification by Wife in the

---

[1] Mediation, prior to court involvement, is required under paragraph 21 of the Agreement. Hence, Husband's petition for modification was premature.

- 4 -

event that Husband changed his employer. However, it is at this point where procedurally, this matter becomes complicated.

First, on April 5, 2021, the court issued two orders: (1) an order granting Wife's motion to dismiss Husband's petition[2]; and (2) an order denying Husband's motion for reinstatement of his petition. Then, on April 12, 2021, the court issued another order which provided for a full-day hearing on the interpretation of the Agreement's subparagraph 6(h).[3] Apparently to correct this ambiguity, the court directed both parties to file respective motions for reconsideration, with the Husband's motion directed to the April 5 orders and the Wife's motion addressed to the April 12 one.

On May 10, 2021, the court denied Husband's motion and granted Wife's by subsequently vacating the April 12 scheduling order. Husband appealed from both of these orders on May 12. The preliminary question, therefore, is whether Husband appealed from a final order or final orders.

In Wife's brief as well as her subsequent motion to quash this appeal, Wife contends that the April 5, 2021 orders disposed of all claims and of all parties. As such, those orders were the operative "final orders" for appeal purposes under Pennsylvania Rule of Appellate Procedure 341(b). As those

---

[2] The order further required Husband to make an alimony payment that reflected the full base amount he was required to remit to Wife under subparagraph 6(c) from January 1, 2021 through March 31, 2021.

[3] Strangely, as indicated, *infra*, this order was not filed until June 1, 2021.

orders were filed on April 7, 2021, Husband should have filed an appeal by May 7, 2021, within thirty days.[4] *See* Pa.R.A.P. 903(a). Wife characterizes the April 12, 2021 order as merely "administrative" and effectively meaningless given that Husband's modification petition had already been dismissed. *See* Motion to Quash Appellant's Consolidated Appeals, at ¶¶ 15-16; Appellee's Brief, at 9. We disagree and find that under these unique circumstances, an appeal from the order granting reconsideration of the scheduling order (thereby vacating it) was not demonstrably inappropriate. To the extent that Husband should have appealed from the April 5 orders, as Wife suggests would have been proper, Husband's notice of appeal date still fell within the thirty-day appeal period necessary to file a timely appeal.

First, we note that in civil cases, the operative date for an appeal is "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)." Pa.R.A.P.

_____

[4] Somewhat conversely, Wife also insinuates that, under one interpretation of this case's posture, Husband was, in fact, premature in filing his notices of appeal. *See* Motion to Quash Appellant's Consolidated Appeals, at ¶¶ 33-35 (illuminating that the April 12 scheduling order, should that be the relevant order for appeal purposes, was not filed until June 1 and that Husband's appeals predated the filing date). We emphasize that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5). As there was a known outcome related to the scheduling order as well as the order granting reconsideration when Husband filed his appeals, any argument that he was too early in his filings, following this line of reasoning, is misplaced.

108(b). Here, in the first set of orders, although they were both dated April 5, 2021, and filed April 7, 2021, those "notation" dates are April 13, 2021, for the order denying Husband's modification petition and April 14, 2021, for the order granting Wife's motion to dismiss Husband's petition. Had there been no subsequent order issued to cloud the case, Husband would have needed to appeal from those orders within thirty days of those latter dates, respectively.

However, the court also issued the April 12, 2021 order which, by its very words, came after explicit "consideration" of Wife's motion to dismiss Husband's modification petition. Order of Court, dated April 12, 2021. That order was not filed until June 1, 2021, and it is unclear, based on the record, when Rule 236(b) notice was sent to the parties.[5] Although the April 12 order was seemingly ordered in error, that fact does not diminish the confusion or uncertainty that occurred. In effect, given the literal language of the order, it was plausible for Husband to assume that the April 12 order superseded the orders that came just a few days prior. Building further on that inconsistency, the court then instructed the parties to file motions for reconsideration of the order or orders that were adverse to them, and Husband has appealed from the orders that followed these motions.[6]

---

[5] The entry indicates that Rule 236 notice was sent to all parties on "MM/DD/YYYY". **See** Allegheny County Department of Court Records, Civil/Family Division Docket Report, FD-17-009431, at 2

[6] The record indicates that both orders addressing reconsideration have a Rule 236 notice date of May, 21, 2021.

Husband's appeal from the order denying his motion for reconsideration was erroneous. ***See Blackburn v. King Investment Group, LLC***, 162 A.3d 461, 464 n.5 (Pa. Super. 2017) ("An order denying a motion for reconsideration is not appealable.") (citation omitted). However, given that Husband simultaneously appealed from the order granting Wife's motion for reconsideration, we are unable to find any authority dictating that the converse proposition is true: whether an order granting a motion for reconsideration is appealable. Our rules indicate that "any party who is aggrieved by an appealable order … may appeal therefrom." Pa.R.A.P. 501. As to what constitutes a final, appealable order, it must dispose of all claims and of all parties. ***See*** Pa.R.A.P. 341(b)(1).

Seemingly, then, a granted motion for reconsideration could be an appealable order if it has the effect of completely terminating a case. Here, when the court granted Wife's motion for reconsideration, it, in essence, removed the uncertainty surrounding the procedural or legal significance of the scheduling order, rendering it a nullity. Consequently, the April 5 orders were rehabilitated to having their full force, namely resulting in a dismissal of Husband's modification petition.

Interestingly, the appeal dates for the April 5 orders were still active when the motions for reconsideration were adjudicated and Husband correspondingly filed his notices of appeal. In light of the court's actions, Husband could, and probably should, have filed notices of appeals as to those

earlier orders.[7] With that said, the court's issuance of the scheduling order, and its subsequent suggestion for both parties to file motions for reconsideration, clearly created inherent ambiguities in the record, both at the lower court level and for appeal purposes, as to the level of the case's finality.

In some sense, the granting of reconsideration on May 10 acted in a way that concluded the case, extinguishing any ability for Husband to pursue his claim further, which would place it in the realm of being appropriate for final order purposes. However, in another sense, that same order merely revived or removed doubt from the orders that were already in place and did not, in and of itself, dispose of the claims and parties.

Broadly speaking, absent the scheduling order, Husband almost certainly would have appealed from the initial batch of orders dismissing his modification petition. The confusion created by the *post hoc* order, scheduling a hearing for the primary dispute in this case, created uncertainty over whether those first orders still carried legal force. Eventually, after the motions for reconsideration were resolved, Husband's petition was still dismissed.

Even if it was error for Husband to appeal from the court's grant of Wife's motion for reconsideration, we reiterate that his May 12 appeal was still timely as to those April 5 orders. Therefore, assuming that the appeal actually lies in

---

[7] However, Husband may have not possessed the knowledge that he was still within an appropriate timeframe. It appears that both parties believe that the filing date of an order, rather than the notated Rule 236 notice, is the relevant date for appeal purposes.

the April 5 order rather than the order he actually appealed from, such a technical error can be overlooked in the context of Husband's timeliness when coupled with the uncertainties created through the scheduling order and reconsiderations. ***See Pittsburgh Const. Co. v. Griffith***, 834 A.2d 572, 579 (Pa. Super. 2003) (declining to quash an appeal when, despite the appeal being from technically the wrong order, the appeal was still filed timely as to the correct order). Accordingly, we deny Wife's motion to quash and proceed to review the merits of Husband's appeal.

Husband presents two questions:

1. Did the trial court err in determining that the parties' Agreement prohibited modification of Husband's alimony obligation until 2024 when subparagraph 6(h) clearly states that his obligation becomes modifiable in 2021 if he was no longer employed at Federated, starting in 2021?

2. Did the trial court err in not conducting a parol evidence hearing to resolve the ambiguity contained in subparagraph 6(h)?

***See*** Appellant's Brief, at 4.

Taking Husband's two issues in tandem, we find that the Agreement necessitates a parol evidence hearing. To begin, we note that "[a] settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." ***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007) (citation omitted). In our role as an appellate court, we are guided by the following precepts:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of

- 10 -

review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Id*. (citations omitted).

Interpretation of an agreement requires an ascertainment of the parties' intent. **See Kripp v. Kripp**, 849 A.2d 1159, 1163 (Pa. 2004) (citation omitted). "In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning." **Id**. (citation omitted). In the event of an ambiguity, however, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." **Id**. (citation omitted). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." **Id**. (citation omitted). If a writing is deemed to be ambiguous, it is interpreted by the finder of fact, not as a matter of law. **See id**. (citation omitted).

The lower court found nothing to be unclear about the Agreement, as written. First, the court determined that "the parties' rights to modify alimony

- 11 -

in 2021 [were exclusively] controlled by the more general provisions of [subparagraph] 6(h)[.]" Trial Court Opinion, 9/15/21, at 2. As to subparagraph h, it concluded that "the most reasonable interpretation of the [Agreement] was that Wife [and only Wife] was permitted to seek upward modification of the alimony obligation in the event that Husband no longer worked at Federated <u>and</u> that he was earning more salary and/or bonuses than he had at Federated." **Id**. (emphasis in original). Then, the court illuminated subparagraph 6(c)'s language, which establishes that alimony is nonmodifiable except if Husband becomes disabled through no fault of his own. **See id**.

Wife's brief reads in a similar manner: "the only reasonable, logical and congruent interpretation of the … provisions is that **only Wife** is entitled to modify the 25% bonus portion of her alimony award under [subparagraphs] 6(c) and (h)." Appellee's Brief, at 19 (emphasis in original). To Wife, at least until the year 2024, subparagraph (h) does not have any impact on the monthly payments identified in subparagraph (c). Instead, subparagraph (h)'s only effect is to allow her to upwardly alter her receipt of Husband's bonus payments, in the event Husband is no longer employed at Federated. Moreover, Wife states that "the apparent conflicting provisions must be construed together with the more specific provisions prevailing over the general ones." **Id**., at 19-20. In addition, Wife points out that subparagraph 6(d), which governs the years 2024-2027, includes a modifiability clause,

whereas (c) does not. ***See id***., at 20. Accordingly, subparagraph 6(h) is "trumped" by the specific provision of (c), establishing that alimony is nonmodifiable absent Husband becoming disabled. ***See id***.

We agree with the court and Wife that their interpretation of the Agreement is reasonable. However, after a thorough perusal of the Agreement, we are unable to conclude that Husband's dissimilar and distinct interpretation is unreasonable, hence why a parol evidence hearing is necessary.

To start, subparagraphs 6(c) and (d) each reference the "Bonus Restricted Stock Program–Investment Management–Action Required Memo". That program appears to be exclusive to, and reliant upon, Husband's employment at Federated and would likely be inapplicable in the event Husband finds another employer. It is therefore conceivable, if not for certain, that these subparagraphs were wholly drafted in contemplation of Husband remaining employed at Federated. Furthermore, as to subparagraph (c), after enumerating the base amount of alimony to be paid monthly and in conjunction with the yearly Federated bonus, it states that "this alimony is non-modifiable" without any kind of further elaboration or clarification as to whether the monthly and yearly payments were divorceable from one another.

As to subparagraph (d)'s distinct language indicating that alimony *is* modifiable based on a substantial change in either party's circumstances, it immediately goes on to provide a singular example of this "modifiability" that

parallels subparagraph (c)'s language regarding the deductibility of payments under shifting federal income tax laws. Practically speaking, if these two subsections are to have different meanings, it is unclear why language was specifically used purporting to allow for modification in subparagraph (d) when it is essentially the identical language contained in subparagraph (c) (which does not generally allow for modification).

More broadly, there is only one subparagraph, throughout the entirety of the Agreement, that provides any sort of mechanism in the event Husband ceases working at Federated: subparagraph (h). Therein, it provides that alimony is unquestionably modifiable should that aforesaid condition be met. The problem, however, is the legal or logical import of the succeeding phrase "as such." Is that clause acting in a way analogous to a "for example" situation, or is it manifesting itself in a closed "that is to say" manner? If it is the former, Husband is clearly allowed to seek modification of his alimony payments, as the language thereafter was simply included to protect the Wife's interests in the event Husband's compensation is subsequently altered in any way. If it is the latter, under these facts, Wife is the only party with the power to petition for modification, limited solely to an upward increase in alimony derived from compensation comparable to Husband's Federated bonus.

Based on the record, we cannot settle this ambiguity at this juncture and remand for a parol evidence hearing to determine, with specificity, what

the parties' intentions were as to subparagraph (h). While not determinative and with the understanding that parties, in contracts, are bound by the promises they make, it strains credulity to assume that Husband would readily agree to such an onerous provision in an alimony agreement, providing him with no basis to amend his payments in the event he is terminated from Federated and thereafter receiving a greatly reduced amount of total compensation, which is precisely what happened here.

As such, we reverse the lower court order granting Wife's motion for reconsideration. Necessarily, then, we reverse the court's orders that dismissed Husband's petition for modification and remand so that a parol evidence hearing can take place, providing a determination as to the specific meaning and impact of subparagraph 6(h).[8]

Orders reversed. Case remanded with instructions. Motion to quash Appellant's consolidated appeals denied. Jurisdiction relinquished.

---

[8] To the extent Wife complains that Husband's brief improperly contained "purported references to negotiations which predate and precede the date of the execution of the parties' [Agreement,]" Appellee's Brief, at 16, such material, to the extent that it exists, played no part in our decision.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/5/2022