

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2006

# Winer Family Trust v. Queen

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3394

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Winer Family Trust v. Queen" (2006). *2006 Decisions.* Paper 33.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/33

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3394

THE WINER FAMILY TRUST, Individually
and on behalf of all others similarly situated

SEAN FITZPATRICK
(Intervenor in D.C.)

v.

MICHAEL QUEEN;
THOMAS McGREAL; JOSEPH W. LUTER, IV;
MICHAEL H. COLE; SMITHFIELD FOODS, INC.;
PENNEXX FOODS, INC.; SHOWCASE FOODS, INC.

Pennexx Foods, Inc.,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-4318
(Honorable John R. Padova)

Argued November 9, 2006

Before: SCIRICA, *Chief Judge*, McKEE and STAPLETON, *Circuit Judges*

(Filed December 22, 2006)

RONALD J. MANN, ESQUIRE (ARGUED)
727 East Dean Keeton Street
Austin, Texas 78705

MAURICE R. MITTS, ESQUIRE
ERIC F. SPADE, ESQUIRE
Mitts, Milavec & Spade
1835 Market Street, Suite 1500
Philadelphia, Pennsylvania 19103
        Attorneys for Appellant

EDWARD J. FUHR, ESQUIRE (ARGUED)
TERENCE J. RASMUSSEN, ESQUIRE
ERIC H. FEILER, ESQUIRE
JESSICA M. ERICKSON, ESQUIRE
MONICA S. CALL, ESQUIRE
Hunton & Williams
Riverfront Plaza, East Tower, 13TH Floor
951 East Byrd Street
Richmond, Virginia 23219

ALAN K. COTLER, ESQUIRE
MILIND M. SHAH, ESQUIRE
Reed Smith
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103-7301
        Attorneys for Appellees,
        Smithfield Foods, Inc., Joseph W. Luter, IV,
        Michael H. Cole, and Showcase Foods, Inc.

STEVEN A. SCHWARTZ, ESQUIRE
KIMBERLY M. DONALDSON, ESQUIRE
Chimicles & Tikellis
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

AVI N. WAGNER, ESQUIRE
Glancy, Ginkow & Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
        Attorneys for Appellee,
        The Winer Family Trust

2

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

Pennexx Foods, Inc. appeals the District Court's dismissal of its cross-claim against Smithfield Foods, Inc.[1] The District Court dismissed the cross-claim for failure to state a claim upon which relief could be granted, basing its decision on a forbearance agreement between the parties that contained a general release by Pennex of all legal claims against Smithfield. Pennexx contends Smithfield breached the forbearance agreement, voiding the general release. We will affirm.

I.

In June 2001, Pennexx (then known as Pinnacle Foods, Inc.), a provider of "case-ready" meat in the northeastern United States, entered into a stock purchase agreement with Smithfield, a global producer and distributor of pork and processed meat products. The agreement called for Smithfield to purchase fifty percent of Pennexx's outstanding stock, and included a credit agreement whereby Smithfield agreed to provide Pennexx with a revolving line of credit in exchange for a blanket lien and security interest in all of Pennexx's real and personal property.[2]

---

[1]Pennexx's cross-claim was filed in a shareholders' suit brought by the Winer Family Trust in which both Pennexx and Smithfield were defendants.

[2]Smithfield's stake in Pennexx declined to 40.5% in February 2003 when Pennexx sold an additional 2.85 million shares of common stock.

With Smithfield's logistical and financial support, Pennexx established and moved into a new plant in Philadelphia. But Pennexx soon encountered financial difficulties. Smithfield waived two potential defaults by Pennexx in 2002, but declared all outstanding amounts immediately due and payable because of default in May 2003. Smithfield commenced a replevin action and obtained a writ of seizure for all tangible property located at Pennexx's Philadelphia facility.

On May 29, 2003, Pennexx and Smithfield entered into a forbearance agreement. Pennexx agreed to pay outstanding loan obligations and expenses totaling approximately $13 million by June 9, 2003. Smithfield agreed to forbear from exercising its rights and remedies under the credit agreement and writ of seizure until June 18, 2003, provided Pennexx complied with its obligations. Smithfield agreed to several terms designed to facilitate Pennexx's attempt to redomesticate itself in Delaware. The forbearance agreement included a general release of Smithfield from all obligations and liabilities other than those set forth within the agreement.[3]

---

[3]Paragraph 10 of the forbearance agreement reads, in full: "General Release of Smithfield. Except for Smithfield's obligations under this Agreement, Pennexx, individually and on behalf of its stockholders and affiliates in their respective capacities as such, hereby irrevocably and absolutely releases, remises, acquits, and discharges Smithfield and each of its current and former officers, directors, employees , shareholders, affiliates, subsidiaries, parent corporations, attorneys, agents, affiliates, predecessors, successors and assigns, from any and all claims, causes of action, actions, liabilities, damages, losses, expenses, costs and demands, of any kind or nature whatsoever, absolute, or contingent, matured or unmatured, liquidated or unliquidated, now known or subsequently discovered, arising prior to [May 30, 2003] or in any way relating to actions, omissions or events occurring or failing to occur prior to [May 30,

(continued...)

4

The District Court entered a stipulated order on May 30, 2003, approving the forbearance agreement as a consent decree. *Smithfield Foods, Inc. v. Pennexx Foods, Inc.*, No. 03-3155, at 1 (E.D. Pa. May 30, 2003). But Pennexx failed to pay its debt under the forbearance agreement, and Smithfield subsequently took control of Pennexx's assets and operations, sold all of its tangible property assets, and terminated Pennexx's ability to continue operations.

In a separate shareholders' suit brought by the Winer Family Trust against Pennexx and Smithfield, Pennexx filed the cross-claim at issue here against co-defendant Smithfield, setting forth fourteen claims against Smithfield, including contribution, fraud, breach of fiduciary duties, tortious interference, breach of contract, breach of duty, negligence and negligent misrepresentation. At the heart of these claims was the contention that Smithfield breached the forbearance agreement by refusing to sell back its shares of Pennexx.

---

[3](...continued)
2003], specifically including without limitation (i) all claims and causes of action, if any, arising out of or in any way relating to the Loan Documents, the Leases, the Guaranty, this Agreement, or any course of conduct, course of dealing, statements (oral or written) or actions of Smithfield in interest in connection with the Loan Documents, the Leases, the Guaranty, or this Agreement, (ii) all claims or causes of actions [sic] that were or could have been asserted in the Replevin Action, and (iii) all claims and causes of action asserted in the brief filed by Pennexx in the Replevin Action on May 27, 2003. Pennexx further hereby irrevocably and absolutely releases, remises, acquits and discharges any and all third parties that are liable (in tort, contract or otherwise) with Smithfield to Pennexx on or with respect to any of the claims, causes of action, actions, liabilities, damages, losses, expenses, costs or demands released in the preceding sentence of this Paragraph 10."

5

The District Court granted the Smithfield defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Pennexx's cross-claim in its entirety on May 17, 2005.

## II.

The District Court had diversity jurisdiction over this Fed. R. Civ. P. 13(g) cross-claim under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. Our review of a District Court's grant of a motion to dismiss under Rule 12(b)(6) is plenary. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). In reviewing a grant of a motion to dismiss "we are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Id.* The motion to dismiss should be granted only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Id.* at 351. "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Id.*

## III.

Pennexx acknowledges that nine of its claims are barred by the terms of the forbearance agreement.[4] It contends, however, these claims should be reinstated because

---

[4]These claims were: I. Contribution; II. Fraud in the inducement as to the Smithfield/Pennexx joint venture; V. Breach of fiduciary by Smithfield executives and Pennexx board members Joseph W. Luter, IV, and Michael H. Cole; VI. Breach of fiduciary duty by Smithfield; VII. Tortious interference with Pennexx's existing contractual relationship with Pathmark; VIII. Tortious interference with Pennexx's prospective contractual relations; IX. Breach of contract as to the credit agreement; XII. Negligent misrepresentation as to Smithfield's intent to partner with Pennexx in

(continued...)

Smithfield breached the agreement when it refused to sell back its Pennexx shares, which Pennexx sought as part of entering a joint venture with prospective investor Swift & Co. Pennexx contends this alleged breach voided the general release provisions of the agreement. It also contends the remaining five claims[5] should be reinstated because Smithfield breached the forbearance agreement and perpetrated fraud on both Pennexx and the District Court in entering the forbearance agreement.

Pennexx's claims turn on whether or not the forbearance agreement obligated Smithfield to sell its Pennexx shares, and whether Smithfield's refusal to do so constituted a breach.

The District Court found the forbearance agreement did not create any obligation on Smithfield to sell its Pennexx shares. The District Court determined the terms of the forbearance agreement were unambiguous, and the plain language of the agreement imposed no duty on Smithfield that could be breached through a refusal to sell the shares. The "unambiguous language" of the agreement, the District Court wrote, was "to merely

---

[4](...continued)
supplying Pathmark; and XIV. Negligence by Smithfield in the design and construction of Pennexx's Philadelphia facility.

[5]The remaining claims were: III. Fraud in the inducement as to the forbearance agreement; IV. Fraud on the court through misrepresentations in the forbearance agreement; X. Breach of contract as to the forbearance agreement; XI. Breach of duty of good faith and fair dealing as to the forbearance agreement; and XIII. Breach of duty of good faith and fair dealing as to the credit agreement.

facilitate" the proposed merger by approving both the merger and an increase in the number of authorized Pennexx shares.

A contract is not ambiguous if the court can determine its meaning without any guide other than knowledge of the simple facts on which its meaning depends. *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 93 (3d Cir. 2001). Conversely, "[a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). Under Pennsylvania law, the written contract is the strongest external signal of contracting parties' intent, and, "'[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone.'" *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980) (quoting *E. Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. Super. 1953)). Courts must "'make no inference or give any construction to the terms of a written contract that may be in conflict with clearly expressed language of the written agreement.'" *Mellon Bank*, 619 F.2d at 1009 (quoting *Nat'l Cash Register Co. v. Modern Transfer Co.*, 302 A.2d 486, 488 (1973)).

Pennexx contends the agreement obligated Smithfield to sell back its 40.1% interest in Pennexx. Pennexx cites to one provision in the agreement that Smithfield would "[n]ot take any action to prevent or make more difficult the passage" of a proposed merger, redomestication and recapitalization. But the agreement contains no language that Smithfield was obligated to sell its shares. Nor does the agreement establish any

8

terms or consideration for such a sale. Rather, the agreement's only reference to Smithfield's sale of Pennexx shares is an express prohibition from selling or transferring "any shares of its Pennexx common stock" for 120 days. Otherwise, the agreement is silent on Smithfield's duties with regard to sale of its Pennexx shares.

The agreement obligated Smithfield to assist in the redomestication and recapitalization of Pennexx, but these obligations were limited to either voting Smithfield's Pennexx shares in favor of (1) increasing the number of authorized shares of Pennexx capital stock, and (2) approving Pennexx's proposed merger with a wholly-owned subsidiary, or instead executing a written consent to these actions. Furthermore, the special meeting at which Smithfield was to vote its Pennexx shares or provide written consent was not to take place until, at the earliest, June 18, 2003. Pennexx requested that Smithfield sell its shares in early June 2003, at least ten days before the earliest date offered for this special meeting. Had Smithfield sold the shares, which would have violated the 120-day no sale provision, Smithfield would also have been unable to comply with its obligations to vote the shares as ordered in the agreement.

The relevant terms of the forbearance agreement are unambiguous. The plain language of the agreement did not obligate Smithfield to sell back its Pennexx stock. The agreement prohibited Smithfield from selling its Pennexx shares during the period when Pennexx requested their sale.[6]

_____

[6]Pennexx also points to the "further assurances" clause of the contract, in which the
<span style="float:right">(continued...)</span>

Because there was no obligation to sell its shares of Pennexx, Smithfield's refusal to sell its shares did not constitute a breach of the forbearance agreement. Pennexx's fraud claims rest entirely on the premise that Smithfield never intended to sell its Pennexx shares despite entering an agreement to do so. Because the agreement did not create such an obligation, the fraud claims lack merit and were properly dismissed.

Pennexx has not disputed that the forbearance agreement's general release bars the other nine counts in its complaint. Under Pennsylvania law, a signed release is binding on the parties unless procured and executed by "fraud, duress, or other circumstances sufficient to invalidate the agreement." *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 295 (3d Cir. 2003). As with its fraud claims, Pennexx's contentions that the release was voided depend on a determination that Smithfield breached the forbearance agreement. Again, Smithfield did not breach the agreement, and these claims necessarily fail.

---

[6](...continued)
parties agreed to cooperate with each other and "to execute and deliver all such other instruments and take all such other action as either party may reasonably request from time to time, without payment of further consideration, in order to effectuate the transactions provided for herein." Pennexx argues that its request to Smithfield to sell its stock was a reasonable request within the language of the clause, or, in the alternative, that this clause rendered the contract ambiguous. We disagree. The contract set forth a number of specific obligations for both parties, and the further assurances clause ensured that the parties would not obstruct each other's efforts to comply with their specific obligations. This clause did not impose a duty on Smithfield to sell its stock, however, or render the contract ambiguous in any way.

IV.

For the foregoing reasons, we will affirm the District Court's dismissal of Pennexx's claims against Smithfield.