IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Greco, a/k/a Thom Greco          :
and Greco Holdings, Inc. and               :
Phoenix Estates,                           :
                    Appellants             :
                                           :
            v.                             :
                                           :
Luzerne County d/b/a Luzerne County        :
Workforce Investment Development           :    No. 326 C.D. 2021
Agency                                     :    Argued: June 23, 2022


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                        FILED: July 15, 2022


           Thomas J. Greco, a/k/a Thom Greco and Greco Holdings, Inc. and

Phoenix Estates (collectively, Appellants) appeal from the Luzerne County

Common Pleas Court's (trial court) March 2, 2021 order denying Appellants'

Petition for Reconsideration (Petition). Essentially, the issue before this Court is

whether, pursuant to Article 2 of a lease agreement (Lease) between Appellants and

Luzerne County d/b/a Luzerne County Workforce Investment Development Agency

(Appellee), Appellee was entitled to the privilege of canceling the lease by giving

six months' notice in writing, and if so, whether the fact that Appellee did not give

six months' notice in writing nullifies the privilege.[1]  After review, this Court

affirms.

_____

[1] Appellants present six issues in their Statement of Questions Involved: (1) whether the
trial court abused its discretion in determining that its December 14, 2020 order was a sound
decision based on the fact that the trial court abused its discretion by concluding that Appellee was
entitled to exercise the six-month termination notice when in fact the condition precedent

## Background

On July 15, 2009, Appellants entered into the Lease with Appellee, whereby Appellee would lease from Appellants, and occupy, certain real property. The Lease had a five-year term. Article 3(A) of the Lease, entitled "Rent," specified the rental payments as follows:

> LESSEE agrees to pay LESSOR at such place as the LESSOR shall designate from time to time, in writing, as rent for the leased premises, the minimum annual sum of Fifty-Six Thousand Six Hundred and Eighty-Six Dollars and Thirty Cents ($56,686.30), for the initial five[-] (5) year term of this Lease, payable without demand and without setoff or deduction.
>
> The rent provided for herein shall be paid in monthly installments of Four Thousand Seven Hundred and Twenty-Three Dollars and Eighty-Six Cents, ($4,723.86) payable in advance on the fifteenth (15th) day of each and every month.

---

necessary to exercise the six-months' notice had not occurred, Appellee failed to properly exercise the six-month notice to vacate, in writing, as well as failed to pay six months' rental payment pursuant to the Lease terms; (2) whether the trial court abused its discretion in determining that the trial court's December 14, 2020 order was a sound decision based on the fact that the trial court erred by determining that Appellee did not breach the Lease terms by failing and continuing to fail to pay rent due and owing; (3) whether the trial court abused its discretion in determining that the trial court's December 14, 2020 order was a sound decision based on the fact the trial court erred in the determination of Appellants' damages; (4) whether the trial court abused its discretion by determining that the trial court's December 14, 2020 order was a sound decision based on the fact that the trial court abused its discretion by concluding that a condition precedent necessary to exercise the privilege to terminate the Lease as set forth therein occurred when in fact it had not; (5) whether the trial court abused its discretion in determining that a condition precedent necessary to exercise the privilege to terminate the Lease as set forth in the Lease occurred when in fact it had not; and (6) whether the trial court abused its discretion in not properly applying the Lease terms but rather went beyond the four corners of the Lease in reaching its determination. *See* Appellants' Br. at 4-5. These issues are subsumed in this Court's analysis of the issue as stated, and will be addressed accordingly herein.

Reproduced Record (R.R.)[2] at 33a-34a.

Article 2 of the Lease, entitled "Term," which governed the Lease term as well as the Lease termination upon a condition precedent, provided:

> LESSOR hereby leases the "leased premises" to LESSEE, and LESSEE hereby leases the same from LESSOR, for an "Initial Term" of [f]ive (5) years beginning on the fifteenth (15th) day of July, 2009, and ending July 14, 2014.
>
> Notwithstanding the above, it is understood and agreed between the parties hereto that **if the governmental program or function for which the premises are being leased**, **or the funding for said program or function is abolished**, **restricted or limited in any way or manner by any act**, **regulation**, **or court order of the United States and/or the Commonwealth of Pennsylvania**, **or under authority granted by any law**, **regulation or court order of the United States and/or the Commonwealth of Pennsylvania then and in that event the LESSEE shall have the privilege of canceling this [L]ease by "giving six (6) months" notice in writing** as set forth herein for written notice to LESSOR.

R.R. at 33a (emphasis added).

Appellee failed to make its June 15, 2010 rental payment in full to Appellants.[3] On June 18, 2010, Appellants forwarded to Appellee a delinquency notice, stating therein that if payment was not timely made, Appellee would be in default as set forth in Article 11 of the Lease.[4] On June 29, 2010, Appellee

---

[2] Pennsylvania Rule of Appellate Procedure 2173 requires a reproduced record to "be numbered . . . in Arabic figures . . . followed in the reproduced record by a small a . . . ." Pa.R.A.P. 2173. Appellants did not include the small a in numbering the pages of their reproduced record. Thus, references to specific pages in the reproduced record shall be followed by an a.

[3] Appellee owed Appellants $4,723.86 on June 15, 2010, but only paid $2,361.98. *See* R.R. at 59a.

[4] Article 11 of the Lease provides in pertinent part:

> If LESSEE shall allow the rent to be in arrears more than twenty (20) days after written notice of such delinquency, or shall remain in default under any other condition of this LEASE for a period of

3

forwarded correspondence to Appellants indicating Appellee's intent to terminate the Lease, effective the following day, June 30, 2010.

**Facts**

On May 8, 2017, Appellants filed a Complaint against Appellee alleging therein a breach of contract related to the Lease. The trial court bifurcated the liability and damages issues. Initially, the issue before the trial court was whether there was a legally enforceable agreement. On February 28, 2019, after a non-jury trial, the trial court determined there was a legally enforceable agreement and Appellants were justified in relying on Appellee's actions/non-actions, and set a date for a non-jury trial on damages. By May 16, 2019 order, having determined damages in the amount of $23,205.09, the trial court directed the parties to submit their respective calculations of the legally required prejudgment interest, and the basis therefor, within 10 days of receipt of its order.

Thereafter, Appellants filed a Motion for Reconsideration (Motion). On June 17, 2019, the trial court denied Appellants' Motion and directed the parties to submit their respective proposed interest calculations as previously ordered. On July 1, 2019, Appellants appealed from the trial court's order to this Court. On December 8, 2020, this Court quashed Appellants' appeal because the trial court's

---

twenty (20) days after written notice from LESSOR, or should any other person than [sic] LESSEE secure possession of the premises, or any part thereof, by operation of law in any manner whatsoever, LESSOR may, at its option, without notice to LESSEE, terminate this LEASE[.]

R.R. at 40a.

4

June 17, 2019 order did not dispose of all claims in the case, and thus was not a final, appealable order.[5]

On December 10, 2020, Appellants submitted a brief to the trial court in which they agreed to Appellee's interest calculation as $12,049.98. On December 14, 2020, the trial court issued the following order: "AND NOW, this 14th day of December, 2020, the parties having stipulated to the legally required prejudgment interest requested by [the trial c]ourt's ORDER of May 16, 2019 as being $12,049.98, said [o]rder is MODIFIED and Judgment is entered for [Appellants] in a total amount of $35,255.07." R.R. at 5a (Trial Ct. March 2, 2021 Op.). On December 22, 2020, Appellants filed the Petition requesting that the trial court vacate its December 14, 2020 order, and enter an order in the amount of $186,607.16, as well as prejudgment interest, at the 6% statutory rate, in the approximate amount of $93,173.55, and post judgment interest from the date of judgment. On January 13, 2021, the trial court granted Appellants the opportunity to argue their Petition.

On March 2, 2021, the trial court issued an opinion and an order denying the substantive relief sought within Appellants' Petition. On March 12, 2021, Appellants appealed to this Court.[6] On March 23, 2021, the trial court issued an order pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) directing Appellants to file a concise statement of errors complained of on appeal

---

[5] *See Greco v. Luzerne Cnty.* (Pa. Cmwlth. No. 1678 C.D. 2019, filed Dec. 8, 2020).

[6] Because the trial court held a non-jury trial, Appellants were required to file post-trial motions within 10 days of the verdict in order to preserve their issues for appeal. Appellants filed their Petition within 10 days of the trial court's entry of judgment; thus, this Court will treat the Petition as the required post-trial motion. *See Oak Tree Condo. Ass'n v. Greene*, 133 A.3d 113, 117 (Pa. Cmwlth. 2016) ("A timely motion styled as one for reconsideration where post-trial motions are proper can be treated as a post-trial motion . . . ."). Given that denial of a post-trial motion triggers the entry of judgment, Appellants are appealing from the entry of judgment not the denial of a petition for reconsideration. Accordingly, "[o]ur standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007).

5

(Rule 1925(b) Statement). On April 9, 2021, Appellants filed their Rule 1925(b) Statement. The trial court filed its opinion pursuant to Rule 1925(a) on April 22, 2021.

## Discussion

Initially, the Pennsylvania Supreme Court has explained:

> In interpreting the terms of a contract, the cardinal rule followed by courts is to ascertain the intent of the contracting parties. *Lesko v. Frankford Hosp.-Bucks C[n]ty.*, . . . 15 A.3d 337, 342 (Pa. 2011). If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties. *Kripp v. Kripp*, . . . 849 A.2d 1159, 1162 (Pa. 2004). If, however, the contractual terms are ambiguous, then resort[ing] to extrinsic evidence to ascertain their meaning is proper. *Murphy v. Duquesne Univ. of the Holy Ghost*, . . . 777 A.2d 418, 429 (Pa. 2001). A contract's terms are considered ambiguous "'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" *Id*. at 430.

*Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 909-10 (Pa. 2019) (quoting *Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 463 (Pa. 2015) (citations modified)). The parties herein agree the Lease is unambiguous.

The trial court found, and it has not been challenged thereafter, that there was a legally enforceable agreement between Appellants and Appellee, and therefore Appellee was bound by said agreement. It is further uncontested that Appellee stopped paying rent in June 2010, and gave one day notice of its rental termination. The disputed item is the amount of damages Appellee is entitled to therefor. The issue before this Court is whether, pursuant to Article 2 of the Lease, Appellee was entitled to the privilege of canceling the Lease by giving six months'

6

notice in writing, and if so, whether the fact that Appellee did not give six months'

notice in writing nullifies the privilege.

> The trial court determined:

> The Workforce Investment Board (WIB) was the main source of and oversaw federally funded services to Luzerne and Schuylkill Counties pursuant to the Workforce Investment Act (WIA).[7]   Appellee was a subcontractor to WIB.  It is not a contested fact that WIB made a decision to cancel its contract with Appellee and award a new contract to another provider.  That decision controls th[e trial c]ourt's application of Article 2 [of the Lease] of the above acknowledged legally enforceable agreement, which states:

>> ARTICLE 2 - TERM

>> LESSOR hereby leases the "leased premises" to LESSEE, and LESSEE hereby leases the same from LESSOR, for an "Initial Term" of Five (5) years beginning on the fifteenth (15th) day of July, 2009 and ending July 14, 2014.

>> Notwithstanding the above, it is understood and agreed between the parties hereto that if the governmental program or function for which the premises are being leased, or the funding for said program or function is abolished, restricted or limited in any way or manner by any act, regulation or court order of the United States and/or the Commonwealth of Pennsylvania, or under authority granted by any law, regulation or court order of the United States and/or the Commonwealth of Pennsylvania then and in that event the LESSEE shall have the privilege of canceling this [L]ease by "giving six (6) months" notice in writing as set forth herein for written notice to LESSOR.

---

[7] 29 U.S.C. §§ 2801-2945.

R.R. at 26a (Trial Ct. May 21, 2019 Op.) (quoting Lease Art. 2). Based on these facts, the trial court concluded:

> [Article 2 of the Lease] was to permit the parties to contract for a longer term, but protect the Lessee against the uncertainty of future government funding. At the same time, the Lessor is guaranteed six months' rental income from any limitation or restriction of the program or function for which the premises was being leased. The dissolution and loss of funding for [Appellee] on July 1, 2010[,] and the awarding of a new contract to new providers was exactly the situation Article 2 was intended to address.

R.R. at 26a-27a.

As further support for its conclusion, the trial court relied on Appellants' Complaint allegation and Appellants' June 18, 2010 letter to Appellee. Specifically, the trial court opined:

> [Appellants] in their Complaint admit that the Luzerne County solicitor sent a letter o[n] June 29, 2010[,] advising they intend[ed] to end the [L]ease. That letter indicated [Appellee] would no longer be funded after June 30, 2010.
>
> [Appellants'] letter of June 18, 2010 to [Appellee] and the [Luzerne] County Commissioners advised of Article 11 - default by Lessee. It also made two other significant admissions:
>
>> It is our understanding [Appellee], an agency of Luzerne County, will no longer be in existence and that [Appellee] will no longer represent Luzerne County in the admi[nistration] of the governmental programs for functions for the workforce of Luzerne and Schuylkill Counties.
>>
>> As other entities and private contractors[] have taken over the responsibilities of implementing the workforce programs and functions, I suggest that the Honorable Luzerne County Commissioners discuss and urge the new private contractors or entities directly or through the [WIB] to consider

8

entering into an agreement to assume the responsibilities of Luzerne County and enjoy the use of the leased premises (office space) at Phoenix Plaza as part of their implementation of the governmental programs or functions to mitigate the eligibility of Luzerne County for this said Lease [].

R.R. at 27a (quoting R.R. at 60a (June 18, 2010 Letter)).

Appellants argue, *inter alia*, that Article 2 of the Lease does not apply because the governmental program or function for which the premises was being leased, or the funding for said program or function was not abolished, restricted or limited in any way or manner by any act, regulation or court order of the United States and/or the Commonwealth of Pennsylvania, as required by Article 2 of the Lease. Specifically, Appellants contend that Article 2 of the Lease does not provide any language relative to Appellee losing funding or being abolished. Appellants assert that Appellee is an agency that implemented the governmental programs, programs which continue to exist today and programs which never lost funding. Thus, Appellants declare that there is no evidence that the governmental programs lost funding, but, rather, the evidence establishes that the subject governmental programs were continually funded and were in existence from the time Appellee defaulted and breached the agreement to the present.

As admitted by Appellants, it was Appellee's function to "implement[] the government programs[.]" Appellants' Br. at 14. Thus, when WIB made a decision to cancel its contract with Appellee and award a new contract to another provider, Appellee's "function for which the premises [was] being leased, or the funding for said program or function [was] abolished," as required under Article 2 of the Lease. R.R at 33a. Accordingly, this Court discerns no error in the trial court's conclusion that "[t]he dissolution and loss of funding for [Appellee] on July 1,

9

2010[,] and the awarding of a new contract to new providers was exactly the situation Article 2 of the [L]ease was intended to address." R.R. at 27a.

Appellants assert that, assuming arguendo, Article 2 of the Lease applies to the instant matter, Appellee is not entitled to the privilege of canceling the Lease thereunder because it failed to provide the required six months' notice. Thus, Appellants maintain that Appellee is liable for the entire five years' rent under Article 11 of the Lease. This Court disagrees.

The first paragraph of Article 2 of the Lease specifies the Lease term as "[f]ive (5) years." However, the second paragraph of Article 2 of the Lease clearly provides Appellee with "the privilege of canceling th[e L]ease," "if the governmental program or function for which the premises [is] being leased, or the funding for said program or function is abolished, restricted or limited in any way or manner." R.R. at 33a. Further, Article 11 of the Lease provides Appellants with the "option, without notice to LESSEE[ to] terminate th[e] LEASE[,]" "[i]f LESSEE shall allow the rent to be in arrears more than twenty (20) days **after written notice of such delinquency**[.]" R.R. at 40a (emphasis added).

On June 18, 2010, Appellants forwarded to Appellee a written delinquency notice. *See* R.R. at 60a. On June 29, 2010, Appellee forwarded correspondence indicating Appellee's intention to terminate the Lease. *See* R.R. at 69a. As evidenced by the record, Appellee exercised its privilege of canceling the Lease under Article 2 of the Lease before Appellants terminated the Lease under Article 11 of the Lease, as Appellee's letter terminating the Lease was forwarded before the 20 days after the delinquency notice had expired, i.e., July 8, 2010. Accordingly, Article 2 of the Lease controls.

Under Article 2 of the Lease, Appellee was required to provide six months' notice of cancellation. Therefore, Appellants were entitled to six months' rent prior to the Lease cancellation. Because Appellee failed to pay the required six

10

months' rent, the trial court awarded Appellants the unpaid June rent, plus six months' rent, in addition to *prejudgment interest*.

> The purpose of awarding [*prejudgment*] *interest* as damages
>
>> is to compensate an aggrieved party for detention of money rightfully due him or her, and to afford him or her full indemnification or compensation for the wrongful interference with his or her property rights. The allowance of interest as an element of damages is not punitive, but is based on the general assumption that retention of the money benefits the debtor and injures the creditor.
>
> 25 C.J.S. Damages, § 80.

*TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 263 (Pa. 2012) (emphasis added). Accordingly, this Court concludes that because the trial court correctly calculated the damages due Appellants in accordance with the Lease, the trial court properly denied Appellants' Petition.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge


11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Greco, a/k/a Thom Greco     :
and Greco Holdings, Inc. and     :
Phoenix Estates,     :
           Appellants     :
    :
       v.     :
    :
Luzerne County d/b/a Luzerne County     :
Workforce Investment Development     :    No. 326 C.D. 2021
Agency     :

## O R D E R

AND NOW, this 15th day of July, 2022, the Luzerne County Common Pleas Court's March 2, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge