J-A05006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID C. BALINT, KAYLA D. BALINT, BRUCE E. GRANDEL, STEPHANIE GRANDEL, AND LOLA DRILLING, II, LLC | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| EQT PRODUCTION COMPANY | : : : | No. 301 WDA 2024 |
| APPEAL OF: LOLA DRILLING, II, LLC | : | |

Appeal from the Order Entered February 15, 2024
In the Court of Common Pleas of Greene County
Civil Division at No(s): A.D. 527-2019

| | | |
|---|---|---|
| DAVID C. BALINT, KAYLA D. BALINT, BRUCE E. GRANDEL, STEPHANIE GRANDEL, AND LOLA DRILLING, II, LLC | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| EQT PRODUCTION COMPANY | : : : | No. 302 WDA 2024 |
| APPEAL OF: DAVID C. BALINT, KAYLA D. BALINT, BRUCE E. GRANDEL AND STEPHANIE GRANDEL | : : : | |

Appeal from the Order Entered February 15, 2024
In the Court of Common Pleas of Greene County
Civil Division at No(s): A.D. 527-2019

BEFORE:   MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

---

[*] Retired Senior Judge assigned to the Superior Court.

DISSENTING MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED: June 3, 2025**

I respectfully dissent. I cannot join the Majority's decision to affirm the order entering summary judgment in favor of EQT and against Owners and LOLA.

The Majority accurately summarizes the requirements for establishing a party's right to summary judgment, writing that "[a] trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Majority Memorandum at 13 (citations omitted). In addition, "[t]he moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the nonmoving party." *Id.* (citations omitted). Furthermore, a grant of summary judgment is supposed to be "clear and free from doubt." *Id.* (citations omitted).

Nevertheless, I believe the Majority deviates from the proper standard of appellate review of a grant of summary judgment by engaging in factfinding.[1] In departing from the trial court's rationale underpinning its grant of summary judgment, the Majority writes that, *inter alia*, "neither the map

---

[1] In reviewing a grant of summary judgment, this Court "may reverse . . . if there has been an error of law or abuse of discretion. [However,] the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*." **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

nor the unitization clause are necessary to support a determination [made by the trial court] that EQT engaged in activities sufficient to extend the lease." *Id.* at 18-19.

While it may be true that "nothing in the lease explicitly requires EQT to actually drill a wellbore into Owners' property before July 23, 2018, to extend the lease," *id.* at 19, the lease renewal clause's precise triggering event has not been argued by the parties or adjudicated by the trial court pursuant to the same parameters now employed by the Majority.[2] That clause, located in paragraph 2, establishes that the lease "'shall continue' beyond the primary term so long as 'the premises shall be operated by the Lessee in the search for oil and gas [. . . ].'" *Id.* (emphasis omitted). Indeed, the Majority writes that "[t]he lease contains no definitions elucidating the meaning of 'operated by the Lessee in the search for oil or gas,' and Appellants do not address this language's precise meaning." *Id.* The Majority also highlights another paragraph of the lease which indicates that "[a] well shall be deemed commenced when preparations for drilling have been commenced." *Id.* (citation omitted). The Majority then concludes that "EQT need only commence preparations for drilling a well on the property to extend the lease beyond the primary term." *Id.* at 20.

---

[2] To the extent that the lease is unambiguous, it may be interpreted as a matter of law; if the lease is ambiguous, it is to be interpreted by the factfinder. *See Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).

As the Appellants, in the Majority's summation, did not "argue that EQT did not commence preparations for drilling[,]" *id.* (emphasis omitted), they were not entitled to relief because, instead, the record reflected that "EQT engaged in activities sufficient to extend the lease[,]" by obtaining "the drilling permit and [. . .] setting conductors." *Id.* at 20-21. In essence, then, the Majority finds that there was no issue of material fact as to the lease's renewal given these "commencement" activities by EQT, notwithstanding that such a conclusion departs from the scope of the lower court's summary judgment determination.

I believe that the Majority, in its lease interpretation, adjusts the factual "goal posts" as they existed before the trial court, which was expressly limited to whether drilling, rather than commencement preparations made in advance of drilling, occurred prior to the operative lease renewal date. In so doing, the Majority reaches a conclusion that forecloses on the trial court's inquiry into whether a triable issue of fact exists as it pertains to these now-important preparations.[3] By deviating in this manner, the Majority inherently assumed the role of factfinder, determining, without authority or input from the parties, that "preparations" for drilling had "commenced."[4] In taking this position, it is

---

[3] Although I have no concern with the Majority's reading of the lease, the parties and trial court clearly did not address the salient issue related to drilling preparation commencement.

[4] I also note that the Majority's holding creates inherent unresolved questions. For example, there is no exploration into the threshold required for EQT to "commence preparations for drilling." Although the Majority assumes it to have occurred predicated on the drilling permit and conductors, could *any*

my belief that the Majority stepped beyond its role as an error-correcting court.

Simply put, the Majority illuminates its interpretation of the lease's renewal standard, and in juxtaposing this standard against the facts of this case, holds that EQT factually commenced preparations for drilling. However, because this standard has only been utilized for the first time on appeal, there is a lack of development from the parties, and inquiry made by the trial court, into the requisite threshold that must be established for EQT's actions on the leased land to provide conclusive evidence of preparation commencement. Absent further exploration into the threshold necessary to satisfy the discrete "commencement" phase, it is wholly unclear whether this case is appropriate for summary judgment. As I believe this case requires further exploration as to what, exactly, establishes the "commencement of preparations" so as to trigger the renewal clause of the lease and because such a determination is relevant for a determination of the issues in dispute, I respectfully dissent and would remand for trial.

Additionally, I believe the issue of equitable estoppel, which was not addressed by the trial court, should also be remanded for trial. Without further testimony and evidence, it cannot be determined whether Appellants justifiably relied on EQT's misinformation before entering into the new lease

---

affirmative act by EQT relative to the leased lands constitute the "commencement of preparations" so as to extend the lease both unilaterally and indefinitely?

to their detriment. In the absence of any direction from the trial court, the Majority appears to engage in some level of factfinding in concluding that there was no possible chance of detrimental reliance predicated on both the oral and written communications concerning the supposed lack of lease renewal.